UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2011
```

-------------------------------------------------------x

SYNCORA GUARANTEE INC., f/k/a XL   :
Capital Assurance Inc.,                     :
                                        :
              Plaintiff,           :       09 Civ. 3106 (PAC)
                                        :
    -against-                   :       ORDER
                                        :
EMC MORTGAGE CORPORATION,     :
                                        :
              Defendant.       : 

-------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiff moves for an order, pursuant to Fed. R. Civ. P. 15, 16, and 21, granting leave to amend its Complaint to add (1) Bear, Stearns & Co. (now known as J.P. Morgan Securities, Inc. but hereinafter "Bear Stearns") as an additional defendant; (2) claims for fraudulent inducement and violation of the Securities Exchange Act of 1934 against EMC and Bear Stearns; and (3) a tortious interference claim against Bear Stearns.  Syncora argues that it did not uncover the evidence supporting its new claims until late in the protracted discovery period; and that EMC is not prejudiced.  The Court DENIES the motion to amend in the absence of good cause for its untimeliness

## **Original Complaint**

        On March 31, 2009, Syncora filed its initial Complaint against EMC Mortgage Corporation alleging five causes of action: (1) Breach of Representation and Warranties; (2) Breach of Cure-Representation or Substitute Obligations; (3) Material Breach of the Insurance and Indemnification Agreement; (4) Indemnification; and (5) Attorney's Fees and Costs.  Although Syncora alleged that EMC induced it to issue an irrevocable insurance policy guaranteeing principal and interest payments to investors, the complaint does not allege fraud.

Jurisdiction was based on diversity: Syncora is a New York Corporation with its principal place of business in New York.  EMC is a Delaware Corporation with its principal place of business in Texas.  (Compl. ¶¶ 10, 11).  The Complaint alleged that EMC acted at all times at the behest and under the control of its parent, The Bear Stearns Companies Inc. ("Bear Stearns").  (Id. ¶ 1).  EMC is a wholly-owned subsidiary of Bear Stearns.  (Id. ¶ 12).

The Complaint alleges that EMC was a cog in the Bear Stearns securitization "machine." (Id. ¶ 14, et seq.).  Bear Stearns was a market leader.  "With a corporate objective of increasing origination and securitization volume in this investor-driven market, Bear Stearns affiliates and the lenders it funded actively expanded the use of "stated income," "no ratio," "low doc," and "no doc" loans that required less (or no) documentation to corroborate the borrower's and brokers' representations.  (Id. ¶ 20).  Bear Stearns also frequently provided lenders with warehouse lines of credit to generate—to EMC's specifications—the ever increasing volume of loans for EMC to purchase and securitize."  (Id. ¶20).

As the volume of securitizations expanded, the standards slipped, contravening contemporaneous representations concerning the underwriting practices that had been followed. (Id. ¶ 22).  "The other key to the Bear Stearns securitization market was investor demand for its mortgage backed securities.  Bear Stearns generated this demand by convincing investors that the securities it sold were a safe and profitable investment, despite the fact that, unbeknownst to Syncora and the market at large, those securities were backed by unjustifiably risky loans."  (Id. ¶ 23).  This scheme took many forms.

As part of the scheme, EMC obtained financial-guaranty insurance policies under which EMC "assumed the risk that the loans did not conform to its representations and warranties; while the insurers agreed to assume the risk that loan products conforming to EMC's representations would not perform as anticipated."  (Id. (emphasis in original))

2

Bear Stearns and EMC, acting at Bear Stearns behest, took aggressive steps to expand the volume of securitization and the market for the sale of securitized products. Bear Stearns, however, "did not take steps to ensure the 'quality of the product.' Quite to the contrary, as has recently become clear, Bear Stearns pushed for increased loan volumes at the expense of underwriting standards." (Id. ¶ 25). As a result, many of the mortgage loans were originated by fraud and underwritten without regard to prudent standards, including a good faith assessment of the borrower's ability and willingness to repay the loan. (Id.) As always, the truth eventually outs: "The Bear Stearns securitization machine was a house of cards, supported not by real value and sound practices, but by Bear Stearns appetite for loans and disregard for the risks those loans presented." (Id. ¶ 26).

Against the background of these allegations, the original Complaint examines the transactions at issue: a securitization of 9,871 Home Equity Line of Credit ("HELOC") mortgage loans made by Greenpoint Savings Bank with an aggregate principal balance of $666 million ("Transaction"). In connection with the Transaction, EMC made a series of representations and warranties in various underlying documents, notably, the Mortgage Loan Purchase Agreement and the Indemnification and Insurance Agreement. (Id. ¶ 36, et seq.). All of those promises, representations and warranties were allegedly breached. Syncora claims that EMC refused to live up to its agreements and promises; and that these breaches caused Syncora damages for which it seeks redress.

The May 6, 2009 Civil Case Management Plan, set June 12, 2009 as the deadline for joining additional parties and amending the pleadings. (Dkt. #14). That date was subsequently extended to July 13, 2009, but there has been no extension of the deadline to amend pleadings beyond that date. Discovery began on May 19, 2009, when Syncora issued its first document request to EMC. At the time, Ambac Assur. Corp. v. EMC Mortg. Corp., No. 08 Civ.

9464(RMB)(THK) (S.D.N.Y.) had already commenced before Judge Richard M. Berman; while these cases are not related, they share significant factual overlap.  In August 2009, the parties agreed that the documents EMC produced in Ambac would be deemed produced in this case. (Mem. in Supp. 3).

The crucial documents in this case are the e-mails and other electronic documents from EMC's files, which reveal EMC's internal policies, practices, and evaluation of the HELOCs specific to the Transaction.  (Id. 4).  Syncora claims that it was not until discovery that it had access to the evidentiary support that it needed to learn of, let alone plead, these new claims; and that, in this case, discovery was a long drawn-out process because EMC prioritized the discovery in Ambac, delaying production of Syncora-specific documents.  As a result, the production of Syncora-specific electronic discovery was not complete until April 30, 2010—the last date of major production of Syncora-specific documents, containing 270,422 pages.  In total, EMC has produced twelve million pages, nearly one million of which are specific to Syncora, and several coded databases with tens of thousands of data entries relating to Ambac or Syncora. (Id. 4, 5). While Patterson, Belknap, Webb & Tyler LLP is counsel to both Syncora and Ambac, they have required a "large team" of contact attorneys to review and organize the documents, the most important of which are then analyzed by over twenty-five attorneys and paralegals. (Id.).

**Proposed Amended Complaint**

Syncora gave no indication of its intention to file an amended complaint, add a new party, or assert additional claims until September, 2010—approximately fourteen months after the amendment deadline had passed.  On November 22, 2010, it moved to amend its complaint to add (1) Bear Stearns as an additional defendant; (2) claims for fraudulent inducement and violation of the Securities Exchange Act of 1934 against EMC and Bear Stearns; and (3) a tortious interference claim against Bear Stearns.  It now alleges that, while "the full extent of [its complex and

4

multifaceted] fraud is still being unraveled," Bear Stearns "induce[d] investors and insurers to participate in residential mortgage-backed securities transactions by falsely representing its policies and practices for, inter alia, due diligence, quality control, and the repurchase of breaching loan collateral" as sophisticated risk controls; and by giving investors, insurers, and ratings agencies false and misleading data concerning the attributes and quality of the loans serving as collateral for the proposed securitizations. (Id. at 2).

Syncora maintains that there was good cause for its delay because the documentary evidence supporting these claims was spread throughout millions of pages of documents produced over a long period of time, due to EMC's prioritization of the Ambac discovery. (Id. at 2, 3). EMC responds that the core documents underlying the new allegations were either possessed by Syncora since the start of this litigation or produced by EMC in 2009 and early 2010. (Mem. in Opp. 1).

## Discussion

Having agreed to the schedule for amending the complaint, this schedule may be "modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4); see Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (holding that diligence is the primary consideration in analyzing good cause). As to amendments, after a short period of time has elapsed, amendments may be made "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Here, Syncora has not demonstrated that it acted diligently in pursuing these claims. Syncora requests a drastic amendment—one that effectively converts a contract case to a fraud case. Yet, there is no adequate explanation for its exceptionally long sixteen-month delay. What are the circumstances that lead Syncora to amend its Complaint? First, it maintains that it did not have the documentary proof of its allegations, until well into discovery. Seven conferences with

the Court, several amendments to the Civil Case Management Plan, and a motion for summary judgment passed before Syncora informed the Court of its intention to seek this amendment. EMC responds that Syncora has had the documents since late 2009 and early 2010.  Although discovery was not entirely complete until April 30, 2010, it was done on a rolling basis. Indeed, when Syncora moved for summary judgment on June 25, 2010, it possessed all but two of the document cited in the proposed amended complaint. (Mem. in Opp. 2).  Syncora answers: "Yes, but" the date of production does not count.  Syncora needed time to synthesize and analyze the facts of discovery to support a pattern of misconduct which supports the proposed amendment. While a thorough review of all twelve million pages doubtless takes time, the intricacies of the fraud are not necessary to bring the claim. Rather, Syncora simply needed enough information to satisfy Twombly, Iqbal, and Fed. R. Civ. P. 9(b)'s requirement that fraud be pleaded with particularity.

The Court does not accept these arguments.  While Syncora argues that this was a complicated and well-hidden scheme, the gist of it was readily apparent long before the filing of this lawsuit.  The allegations in the original Complaint reveal that Syncora should have known of these new causes of action long before moving to amend.  They indicate that Syncora was well aware of the relationship between EMC and Bear Stearns, as well as Bear Stearns' role in the entire "securitization scheme."  Bear Stearns was a leader in buying up mortgage loans, securitizing them, and then feeding investor interest with notes and other financial securities backed by ABS, CMOs, RMBS, and equivalent securities.  There was no secret about Bear Stearns' role when Syncora commenced the lawsuit two years ago in 2009.  By then, numerous articles and books had been written about Bear Stearns' alleged transgressions.  There had been SEC investigations.  Indeed, several Bear Stearns' employees were indicted for their roles in the securitization machine.  See, e.g., Landon Thomas, Jr., Prosecutors Build Bear Stearns Case on E-

6

mails, N.Y. Times, June 20, 2008. Finally, many of the allegations of false representations were made to Syncora directly so that it may be said Syncora knew of the representations. (See Mem. in Opp. 13-14).[1]

Syncora was on notice long before documents were produced. Indeed, it is fair to say that in filing the initial Complaint, Syncora made a conscious choice not to move Bear Stearns as a party defendant because to do so would prevent diversity jurisdiction. Well on into the litigation, Syncora now wants to reshuffle the deck and add a party which will destroy diversity. But the addition of the party and the proposed amendments must be based on good cause and Syncora has failed to show any.[2]

For the foregoing reasons, Syncora has failed to demonstrate the good cause necessary to permit this late amendment. The motion is denied.

Dated: New York, New York
March 25, 2011

SO ORDERED

PAUL A. CROTTY
United States District Judge

[1] The Court has considered, and respectfully disagrees with, Judge Berman's adoption of Magistrate Judge Theodore H. Katz's Report and Recommendation permitting a similar amendment in Ambac. 2011 WL 566776 (S.D.N.Y. Feb. 8, 2011).

[2] Syncora claims that diversity jurisdiction will not be terminated because of its securities claim. But Syncora is neither a buyer nor a seller of the securities at issue here. It is an insurer. See MBIA Ins. Corp. v. Spiegel Holdings, Inc., No. 03 Civ. 10097(GEL), 2004 WL 1944452, at * 3, 6 (S.D.N.Y. 2004) (holding that the plaintiff lacked standing to bring a Rule 10b-5 claim since it was "plainly not the actual purchaser or seller of the Notes . . . [but rather] an insurer-it evaluates risk and charges premiums accordingly. Occasionally, it may find itself in the position of having to make disbursements on policies, precisely because of the occurrence of events whose contemplation prompted people to seek insurance in the first place."). No matter how Syncora struggles with subrogation—even equitable subrogation—it does not become a buyer or a seller. Had Court allowed this amendment, then, it clearly would have been most prudent to dismiss the case altogether for loss of diversity jurisdiction. See Ambac v. EMC, No. 08 Civ. 9464(RMB)(THK) (S.D.N.Y. Feb. 8, 2011).