# MURPHY & McGONIGLE

A Professional Corporation

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 15 SEP 2011

Direct phone: (212) 880-3961
E-mail: jgoldfarb@mmlawus.com

60 East 42nd Street, Suite 5230
New York, New York 10165

July 19, 2011

*[Handwritten annotation:] September 15, 2011 — There is no need for a pre-motion conference or motion practice to enforce the protective order in this matter. The dispute arises here because Greenpoint is a party of interest in multiple lawsuits. It argues that a party who is aware of a document produced in one action, may not use that document by calling for its production in another action. That argument must be rejected. Knowledge of the existence of a document is not a "using" of the protective order here, and has not led to a disclosure. So ordered. Paul A. Crotty, USDJ*

**VIA ELECTRONIC MAIL**

The Honorable Paul A. Crotty
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *Syncora Guarantee, Inc. v. EMC Mortgage Corp.*,
No. 09-cv-3106 (S.D.N.Y.)

Dear Judge Crotty:

We represent non-party GreenPoint Mortgage Funding, Inc., in connection with the above-referenced action. We write pursuant to the Court's Individual Practices Rule # 3-C to request a pre-motion conference to address two violations of the protective order entered by the Court on May 6, 2009 (the "Protective Order"). The violations occurred when Syncora's counsel, appearing on behalf of a different client in a mortgage-backed securities lawsuit before Judge Buchwald and another such lawsuit before the Supreme Court of New York, described in detail certain documents, produced by GreenPoint to Syncora in this lawsuit, in an attempt to obtain discovery of those documents in those lawsuits. We respectfully request permission to file a motion to enforce, and enjoin further violations of, the Protective Order.

**Background.** This lawsuit arises from a mortgage-backed securities transaction. Syncora, a financial guaranty insurer, allegedly issued a financial guaranty policy in connection with the transaction. GreenPoint made the mortgage loans that are collateral for the securities issued in the transaction. But GreenPoint is not a party to the lawsuit. In 2009, Syncora subpoenaed GreenPoint for documents connected to the transaction. GreenPoint complied with the subpoena and produced responsive documents. Since then, Syncora's counsel, Patterson Belknap Webb & Tyler LLP, has initiated at least three other mortgage-backed securities lawsuits on behalf of two other financial guaranty insurers.[1] GreenPoint is a third-party defendant in one of those lawsuits (*Assured v. DBSP*), and has received subpoenas from Patterson's clients in the other two lawsuits (*Assured v. EMC* and *Ambac v. EMC*).

**First Violation.** In *Assured v. DBSP*, Assured has sought from GreenPoint certain monthly and quarterly quality control reports (the "Reports"). GreenPoint has declined to produce

---

[1] *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, No. 650705/2010 (N.Y. Sup. Ct.); *Assured Guar. Corp. v. EMC Mortg. Corp.*, No. 10-cv-5367-NRB (S.D.N.Y.); *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 650421/2011 (N.Y. Sup. Ct.).

*[Stamp right margin:] MEMO ENDORSED*

Hon. Paul A. Crotty
July 19, 2011
Page 2

the Reports because they are not material and necessary to Assured's claims and contentions. Assured raised the issue at a compliance conference on May 12, 2011 before the court's law clerk, Mr. Nashi. Specifically, Assured's lawyer from Patterson, Carrie Syme, introduced the issue by stating these words or words to this effect: "We know these reports exist because we requested them under subpoena from GreenPoint **in another matter and GreenPoint produced them**" (emphasis added). That other matter was this matter, *Syncora v. EMC*. Then, Robert Lehrburger, another Patterson lawyer appearing for Assured, described in detail the form and substance of the Reports and offered to provide a copy of a Report to the court. When permitted to respond, I stated that the Protective Order prevented Assured's lawyers from discussing the substance of the Reports. Mr. Nashi stated that he did not want to hear more about the Reports because they appeared to be subject to the Protective Order.

Ms. Syme's and Mr. Lehrburger's discussion of the Reports violated the Protective Order. Section 5(d) of the Order provides that "all . . . information that is received from any Producing Party in the course of this action . . . shall be used . . . **solely** for purposes directly related to the prosecution or defense of this action . . . and **not . . . in connection with any other action or proceeding**" (emphasis added). Section 5(a) provides that material designated as CONFIDENTIAL may be disclosed only to certain persons; those certain persons do not include the court, or parties, in other actions. By discussing the substance of the Reports in an action other than this action in an attempt to obtain discovery in the other action, and by disclosing in detail the substance of the Reports to unauthorized persons, Syncora's counsel violated the Protective Order.

On May 12, 2011, I wrote to Erik Haas, a Patterson partner, to convey GreenPoint's position and to seek assurances that Patterson would not violate the Protective Order again. On May 16, Mr. Haas responded that Patterson, "disagree[d] with your allegations and characterization of the conference. No one from our firm violated any protective order or otherwise acted improperly."[2]

**Second Violation.** On July 5, 2011, Assured, as plaintiff in *Assured v. EMC*, subpoenaed Syncora for all documents that GreenPoint produced to Syncora pursuant to Syncora's subpoena to GreenPoint in this action. Certain Reports are among those documents. On July 8, 2011, GreenPoint requested permission from Judge Buchwald to file a motion to quash the subpoena because, among other reasons, the documents sought are irrelevant to Assured's claims and contentions.

On July 13, in a written response to Judge Buchwald, Mr. Lehrburger again discussed the substance of the Reports: "GreenPoint maintains monthly and quarterly summary reports detailing the results of its quality-control processes, by which it reviews a subset of loans recently originated or purchased and determines whether they adhere to underwriting guidelines or show signs of irregularity or fraud." Mr. Lehrburger also advised Judge Buchwald that "[a]s counsel of record [for Assured and Syncora], [Patterson is] explicitly granted access to documents produced in the many cases in which these clients are involved." (Letter at 5, 3).

---

[2] On July 5, Assured subpoenaed Syncora for all documents that GreenPoint produced to Syncora pursuant to Syncora's subpoena to GreenPoint in this action. GreenPoint moved to quash the subpoena. The motion is returnable on August 4, 2011. There is no reason to believe Assured will refrain from describing the substance of the Reports in its opposition papers, due July 28.

Hon. Paul A. Crotty
July 19, 2011
Page 3

By describing the Reports to a different judge presiding over a different mortgage-backed securities lawsuit on behalf of a different client, Patterson violated the Protective Order. As counsel of record for several financial guaranty insurer-plaintiffs in several of mortgage-backed securities lawsuits, Patterson might have the document access Mr. Lehrburger claims. But, save for certain carve-outs that are inapplicable here, the Protective Order does not permit Patterson to use information obtained in this action to prosecute other actions.

**Meet and Confer.** Today, I spoke by telephone with Mr. Lehrburger pursuant to the Court's Individual Practices Rule # 3-C. I advised Mr. Lehrburger about the purpose of the call and GreenPoint's intention to seek appropriate relief from the Court. I described the two violations and asked for his response.

Mr. Lehrburger denied that Patterson violated the Protective Order. Addressing the second violation first, he said that the description of the Reports in Assured's letter to Judge Buchwald was "very general", that the Reports are a type of document to be requested in these cases, and that Patterson was aware of the Reports from conversations with my colleague, Cameron Matheson, in connection with this and other actions, and from other sources. Turning to the first violation, Mr. Lehrburger said that the discussion of the Reports before the court in *Assured v. DBSP* was general and that no documents were furnished to that court. He also said that Patterson was aware of the Reports from conversations with Mr. Matheson, and from other sources.

Shortly after the telephone call, Mr. Lehrburger called me back to ask what relief GreenPoint seeks. I said that GreenPoint seeks permission to move to enforce, and enjoin further violations of, the Protective Order. Mr. Lehrburger said that Patterson agrees not to violate the Protective Order. I responded that the issue is what conduct constitutes a violation – GreenPoint believes the conduct described above violates the Protective Order; Patterson does not. Mr. Lehrburger did not disagree.

Patterson's position raises more questions than it answers. If Patterson knew about the Reports from other sources, Ms. Syme had no need to initiate the discussion in *Assured v. DBSP* by stating, "We know these reports exist because we requested them under subpoena from GreenPoint in another matter and GreenPoint produced them." Further, the Protective Order applies to information, not merely documents. If, as Patterson claims, disclosing the information contained in a protected document – without actually showing the document – does not violate the Protective Order, the Order affords little protection.

For the foregoing reasons, we respectfully request a pre-motion conference and, if necessary, permission to move to enforce, and enjoin further violations of, the Protective Order.

Respectfully submitted,

James K. Goldfarb

cc:   All counsel of record

103267