

# KELLEY DRYE & WARREN LLP
A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**
**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

DIRECT LINE (212) 808-7718
EMAIL jcallegy@kelleydrye.com

June 23, 2011

**RECEIVED JUN 23 2011 CHAMBERS OF HONORABLE PAUL A. CROTTY U.S.D.J.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 15 SEP 2011

**BY HAND**

The Honorable Paul A. Crotty
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *Syncora Guarantee, Inc. v. EMC Mortgage Corporation*,
No. CV-09-3106 (PAC)

Dear Judge Crotty:

We represent defendant EMC Mortgage Corp. ("EMC") in this action. Pursuant to Rule 3C of Your Honor's Individual Practice Rules, we write to request a pre-motion conference with the Court to address the refusal of plaintiff Syncora Guarantee, Inc. ("Syncora") to produce (1) deposition transcripts of Syncora witnesses from its related litigation against Countrywide, and (2) certain easily identifiable documents reflecting the risk analyses and due diligence performed by Syncora for other similar mortgage-backed securities transactions that it insured in 2004, 2005 and 2006. These documents are highly relevant to this lawsuit and can be produced without imposing any significant burden or cost on Syncora. EMC has conferred with Syncora on several occasions by letter,[1] and telephonically on June 9, 2011, but has been unable to persuade Syncora to produce the documents voluntarily. We therefore respectfully request that the Court compel Syncora to produce them.

## I.  Deposition Transcripts from the Countrywide Action.

EMC seeks production of the transcripts of Syncora witnesses who were deposed in *Syncora Guarantee, Inc. v. Countrywide*, No. 650042/09E (Sup. Ct. N.Y. Cty., Bransten, J.) (the "Countrywide Action"). In the Countrywide Action, Syncora's claims relate to five RMBS transactions—four of which involved Home Equity Lines of Credit ("HELOCs") just like the one at issue in this case. As in this case, Syncora claims that Countrywide breached certain representations and warranties in the relevant securitization documents with respect to the

---

[1] EMC's written attempts to obtain this discovery from Syncora are collectively attached hereto as Exhibit 1. Syncora's responses are collectively attached hereto as Exhibit 2.

---

September 15, 2011

There is no need for a pre-motion conference. Syncora is directed to produce its witnesses' testimony in its Countrywide litigation. The request for document production is denied as untimely.

So ordered.

Paul A. Crotty
USDJ

*MEMO ENDORSED*

**KELLEY DRYE & WARREN** LLP

Honorable Paul A. Crotty
June 23, 2011
Page Two

mortgage loans in the five deals. The legal and factual issues in the Countrywide Action are substantially similar to those presented in this case. Not surprisingly, many of the Syncora witnesses deposed in Countrywide Action have been or will be deposed in this action on the very same topics. And the consistency, or lack thereof, between what those Syncora witnesses said in the Countrywide Action and what they will say in this action is plainly something about which EMC is entitled to discovery.

Syncora has refused to produce deposition transcripts for its witnesses from the Countrywide Action on the grounds that "Syncora's practices with respect to other transactions not at issue in this litigation has no bearing on Syncora's breach of warranty claims, or EMC's defense of those claims." *See* Exhibit 2 hereto. This argument fails for at least three reasons:

*First*, Syncora ignores that the deposition transcripts of Syncora witnesses in other actions are clearly relevant and admissible for purposes of impeachment or otherwise to challenge the credibility of testimony those witnesses may give in this case. *See, e.g., Thong v. Andrew Chreky Salon,* 247 F.R.D. 193, 196 (D.D.C. 2008) (holding that deposition transcript of witness in separate lawsuit was relevant to credibility and thus subject to discovery); *Insul-Wool Insulation Corp. v. Home Insulation, Inc.,* 176 F.2d 502, 503–04 (10th Cir. 1949) (finding depositions taken of plaintiff in one action were admissible against plaintiff on same issue in a subsequent action against different defendants); *see also* Fed. R. Civ. P. 32(a). For this reason alone, EMC is entitled to the deposition transcripts of Syncora witnesses who have been or will be deposed in this action and who were previously deposed in the Countrywide Action.

*Second*, contrary to Syncora's contention, its practices and procedures relating to other similar RMBS transactions are highly relevant to Syncora's decision to insure the GreenPoint Mortgage Funding Trust 2007-HE1 Transaction ("GP 07 Transaction") at issue in this case. Syncora's decision to insure similar risks—and its assessment and analyses of those risks—bears upon its "risk of loss" with regard to the GP 07 Transaction. EMC is entitled to discovery concerning Syncora's analysis of the "risk" it was insuring, which cannot be assessed in isolation from Syncora's decision to insure similar risks in related deals during the same time period. In other words, the GP 07 Transaction cannot be viewed in a vacuum.

*Third*, Syncora's position is inconsistent with the position taken by its counsel on this very issue on behalf of another monoline insurer in a different lawsuit. Syncora's lawyers—Patterson Belknap Webb & Tyler LLP ("Patterson Belknap")—also represent Ambac Assurance Corporation ("Ambac") in related litigation brought against EMC. On behalf of Ambac, Patterson Belknap sought the production of deposition transcripts of EMC witnesses in this lawsuit on the grounds that "Rule 32 allows Ambac to use the deposition of an EMC employee taken in the Syncora action against that same employee in the Ambac action." *See* Exhibit 4 hereto. Indeed, Patterson Belknap eventually subpoenaed *itself* for the production of these

**KELLEY DRYE & WARREN LLP**

Honorable Paul A. Crotty
June 23, 2011
Page Three

transcripts. *See* Exhibit 5 hereto. Remarkably, Patterson Belknap is now taking the diametrically opposite position that EMC is not entitled to deposition transcripts of Syncora witnesses in another action brought against different defendants. Syncora should be required to produce the deposition transcripts of its witnesses deposed in the Countrywide Action, just as the EMC witness transcripts in this case were produced in the Ambac action.

## II.   Select Documents Relating To Other Similar HELOC Transactions.

Syncora has refused to produce certain documents pertaining to other HELOC transactions that Syncora insured in 2004, 2005 and 2006.[2] These documents, which are identified in Appendix A to this letter, are discoverable for the following reasons:

*First*, the documents are clearly relevant to the claims and defenses in this litigation. To begin, Syncora analyzed and relied heavily upon the performance of these other transactions in deciding to insure the GP 07 Transaction.[3] In fact, several of the transactions were explicitly referenced and relied upon by Syncora in its Credit Committee Memorandum dated February 23, 2007 ("Credit Committee Memo") recommending approval of the GP 07 Transaction. *See* Exhibit 6 hereto. In the Credit Committee Memo, Syncora specifically compares the characteristics of the GP 07 Transaction with the GreenPoint 2006 HE1 transaction, Countrywide 2007-A transaction, Countrywide 2006-D transaction, SACO 2006-1 transaction and ACE 2006-GP1 transaction. *See id.* at p. 25. Syncora also analyzed the collateral characteristics, performance, relative processes and expected loss estimates of the Countrywide HELOC transactions.[4] The Credit Committee Memo also provides that, in deciding to insure the GP 07 Transaction, Syncora relied on its prior due diligence of Bear Stearns in connection with the SACO 2006-1 transaction. *See id.* at p. 13 ("[Syncora] performed

---

[2]  Syncora has repeatedly argued to EMC that it has produced documents concerning other transactions that "relate to or refer to" the GP 07 Transaction. *See* Exhibit 2. That is simply not true. For example, Syncora has not produced the documents requested by EMC pertaining to these transactions that pre-date the GP 07 Transaction. Those documents clearly "relate" to the GP 07 Transaction because Syncora analyzed and relied upon them in connection with the decision to enter into the deal at issue in this case.

[3]  EMC's document requests required production of these documents. *See, e.g.*, EMC's First Request for Production of Documents, Nos. 6, 39, 40, 42, 43, 44, 47, 48, 49; EMC's Second Request for Production of Documents, Nos. 6-8, collectively attached hereto as Exhibit 7.

[4]  *See* Exhibit 6 hereto at p. 8 ("We have required a higher loss coverage multiple for GreenPoint versus Countrywide HELOC transactions (which require 1.75x coverage) because of certain aspects of the collateral discussed below."); *id.* at p. 11 ("The collateral is also very similar to the last Countrywide pool we analyzed, Countrywide 2007-A."); *id.* at p. 14 ("Comparison of GreenPoint collateral and performance to Countrywide collateral and performance" used to determine expected loss on Transaction); *id.* at p. 15 (comparing the collateral characteristics and expected loss number "on the last Countrywide deal we analyzed").

KELLEY DRYE & WARREN LLP

Honorable Paul A. Crotty
June 23, 2011
Page Four


due diligence on Bear Stearns' re-underwriting process when we wrapped the SACO deal in early 2006 and updated it for this Transaction. We are comfortable with their process...").

Because Syncora expressly relied on these other HELOC transactions in deciding to wrap the GP 07 Transaction, there is no justification for Syncora's attempt to withhold production of the requested materials. Under the broad standard of Rule 26(b), the challenged document requests are reasonably calculated to lead to the discovery of admissible evidence and are thus proper.

Moreover, documents pertaining to other HELOC transactions are highly relevant to issues of materiality. For instance, Syncora argues that EMC's alleged breaches of contractual representations and warranties materially increased its risk of loss. In determining materiality, "the insurer must present documentation concerning its underwriting practices . . . pertaining to similar risks, which show that it would not have issued the policy if the correct information had been disclosed in the application." *Barkan v. New York Schools Ins. Reciprocal,* 65 A.D.3d 1061, 1064 (2d Dep't 2009). Syncora's "risk of loss" relating to the GP 07 Transaction—and whether the alleged breaches of representations and warranties materially increased that risk—cannot be analyzed or assessed without reference to other risks Syncora insured in related HELOC deals. Materiality is a question of fact and cannot be analyzed in a vacuum. *See Continental Ins. Co. v. RLI Ins. Co.,* 555 N.Y.S.3d 325 (1st Dep't 1990). Whether something was "material" to Syncora must be viewed in context of how it insured similar risks.[5]

In addition, Syncora is seeking the extraordinary remedy of "rescissory damages" for EMC's purported breaches of contractual representations and warranties. *See* 5/25/10 Tr. at 18-20; 5/12/11 letter from Philip R. Forlenza to the Court. But rescission is an equitable remedy. *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.,* 419 F. Supp.2d 419, 435 (S.D.N.Y. 2005). If Syncora is seeking equitable relief in this case, EMC is entitled to assert equitable defenses and obtain discovery pertaining to those equitable defenses, including discovery as to what information Syncora had available to it when it decided to assume the risk of wrapping the GP 07 Transaction.

*Second,* the requested documents are discrete and readily identifiable. *See* Appendix A hereto. EMC is not requesting all documents relating to these other transactions. Instead, EMC is seeking certain select documents—*e.g.,* surveillance reports, performance tracking sheets and credit committee memoranda—that reflect the risk analyses performed by

---

[5] Documents reflecting the risk analyses and due diligence performed by Syncora for other RMBS deals are also highly relevant to issues of causation. Although Syncora has argued that causation is not an element of its claims, *see* May 24, 2011 letter from Philip Forlenza, it clearly is. In any event, even if Syncora is correct—which it is not—its risk analyses and diligence for related transactions are still relevant to several other issues in the litigation.

**KELLEY DRYE & WARREN** LLP

Honorable Paul A. Crotty
June 23, 2011
Page Five

Syncora for these related deals. Syncora has not—and cannot—argue that the production of these materials would be unduly burdensome and costly.

*Third*, and finally, Syncora has already produced documents relating to similar RMBS transactions it insured. For instance, Syncora has agreed to produce documents pertaining to the GreenPoint 2006 HE1 transaction and has already produced, in limited fashion, certain documents relating to the performance of its other HELOC transactions.[6] Consequently, Syncora has no principled justification for refusing to produce the requested documents relating to other HELOC deals.[7]

Respectfully submitted,

John M. Callagy

Attachments

cc: Stacey Friedman, Esq. (via e-mail, with attachments)
Richard A. Edlin, Esq. (via e-mail, with attachments)
Philip Forlenza, Esq. (via email, with attachments)

---

[6] Syncora has also offered to produce documents pertaining to the SACO 2006-1 transaction, but only if EMC does the same. *See* Exhibit 2. Syncora, however, has offered no reasonable explanation as to why documents from EMC relating to the SACO 2006-1 transaction are relevant to this action.

[7] Syncora has argued to EMC that documents pertaining to two of these transactions— the Countrywide 2007 and ACE transactions—are not at all relevant because Syncora did not insure them. *See* Exhibit 2. This is incorrect. Syncora's risk analyses pertaining to these two proposed deals is highly relevant to its decision to wrap the GP 07 Transaction. Indeed, the Credit Committee Memo for the GP 07 Transaction references that Syncora "analyzed" the Countrywide 2007-A deal. *See* Exhibit 6 at p. 11.

# APPENDIX A

## Transactions

- Countrywide Home Equity Loan Trust 2004Q
- Countrywide Home Equity Loan Trust 2004R
- CWABS, Home Equity Revolving Loan Trust 2005-K
- SACO I Trust 2006-1
- Countrywide Home Equity Loan Trust 2006
- GreenPoint Mortgage Funding Trust 2006-HE1
- Indymac Home Equity Loan Asset Backed Trust Series 2006-HE3
- Countrywide Home Equity Loan Trust 2007-A
- ACE Home Equity Loan Trust, Series 2006-GP1.

## Documents Requested for All Transactions

- Credit Committee Memoranda
- Cash flow analyses
- Stress scenarios performed by Syncora
- Surveillance reports, graphs and/or charts
- Monthly surveillance tracking spreadsheets circulated company-wide
- Documents and reports relating to communications with due diligence providers (i.e. CoreLogic, Clayton, Nationwide, Watterson Prime)
- Performance Charts
- Performance/Tracking Sheets
- Communications with rating agencies (i.e. Moody's Fitch and S&P)