UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

| | |
|---|---|
| SYNCORA GUARANTEE INC., formerly known as XL CAPITAL ASSURANCE INC., : | |
| *Plaintiff*, : | Index No.  09 CV 3106 (PAC) |
| vs. : | |
| EMC MORTGAGE CORPORATION, : | |
| *Defendant*. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**STATEMENT OF MATERIAL FACTS UNDER LOCAL CIVIL RULE 56.1 IN
SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

        Pursuant to Local Civil Rule 56.1, Plaintiff Syncora Guarantee Inc. ("Syncora")

hereby submits this Statement of Material Facts as to which Syncora contends there is no

genuine issue to be tried in support of its Motion for Partial Summary Judgment, filed today,

October 26, 2011.

## THE TRANSACTION

        1.     The subject matter of this litigation is a transaction known as GreenPoint

Mortgage Funding Trust 2007-HE1 ("the Transaction") involving the securitization of a pool of

residential mortgage loans called home-equity lines of credit, or HELOCs.  Complaint ¶ 2,

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 09-cv-3106 (S.D.N.Y. Mar. 31, 2009) (Dkt.

No. 1) ("Compl.").

        2.     The Transaction closed on March 6, 2007.  Compl. ¶¶ 30-31.

.

3.      The Transaction was effectuated through a network of agreements – the "Operative Documents" – that governed the rights and obligations of the various parties to the Transaction.  Syncora has invoked three of the Operative Documents in this action: the Insurance and Indemnity Agreement ("I&I Agreement"), the Mortgage Loan Purchase Agreement ("MLPA"), and the Sale and Servicing Agreement ("SSA").  Compl. ¶¶ 30-35.  These documents are attached to the Declaration of Philip R. Forlenza ("Forlenza Decl.") as Exhibits 1, 3, and 4, respectively.

4.      Each of these three agreements has a different combination of parties and serves different purposes.  Syncora is a direct party only to the I&I Agreement.  Syncora is a third-party beneficiary of the MLPA and SSA.  Forlenza Decl. Ex. 1 § 2.01(j); Forlenza Decl. Ex. 3 § 27; Forlenza Decl. Ex. 4 § 8.16.

5.      As the "Sponsor" of the securities in the Transaction, EMC Mortgage Corporation ("EMC") pooled and securitized approximately 9,871 HELOCs, with an aggregate principal balance of more than $666 million.  Compl. ¶ 30.

6.      EMC previously purchased the HELOCs from their originator, the now-defunct mortgage lender GreenPoint Mortgage Funding, Inc. ("GreenPoint").  Compl. ¶¶ 28, 30.

7.      The Transaction was a securitization transaction, in which the income from the HELOCs was "securitized" and then purchased by investors.  As part of the Transaction, EMC sold and assigned its interest in the HELOCs to its affiliate Bear Stearns Asset Backed Securities I LLC ("BSABS") pursuant to the MLPA.  BSABS, in turn, sold and assigned its interests in the HELOCs to the GreenPoint Mortgage Funding Trust 2007-HE1 (the "Trust") pursuant to the SSA.  The Trust then issued various classes of securities (the "Notes"), the most senior of which were  registered by Bear, Stearns & Co., with the U.S. Securities and Exchange

Commission before being sold to investors.  These Notes are commonly referred to as "mortgage-backed securities."  Investors who purchased the Notes are entitled to receive a portion of the income realized by the Trust on the HELOCs.  Compl. ¶¶ 14, 30-32.

8.      Syncora has one role in relation to the Transaction – that of insurer. Syncora insured that the holders of the senior ownership certificates would receive their payments in the event of a cash shortfall to the Trust.  As insurer, and pursuant to the I&I Agreement, Syncora issued Financial Guarantee Insurance Policy No. CA03607A, effective March 6, 2007 ("the Policy").  Compl. ¶¶ 32-35; Forlenza Decl. Ex. 1 § 3.01.  A copy of the Policy is attached to the Forlenza Declaration as Exhibit 2.

**THE I&I AGREEMENT**

9.      The I&I Agreement is the only Operative Document to which Syncora is a party.  The counterparties to the I&I Agreement include EMC, as "Sponsor," Bear Stearns Asset Backed Securities I LLC, as "Depositor," GreenPoint Mortgage Funding Trust 2007-HE1, as "Issuer," GreenPoint Mortgage Funding, Inc., as "Servicer," LaSalle Bank National Association, as "Master Servicer and Securities Administrator," and Citibank, N.A., as "Indenture Trustee." Forlenza Decl. Ex. 1.

10.     Under the I&I Agreement, Syncora committed to issue an irrevocable insurance policy guaranteeing certain payments of interest and principal due on securities sponsored by EMC.  *Id.* § 3.01 (issuance of the policy required by I&I Agreement); Forlenza Decl. Ex. 2 at 1 (policy cannot be cancelled or revoked).  Syncora is obligated to pay insured security holders for any shortfall in cash flow from the underlying loans, regardless of the reason for the shortfall.

11.   In the I&I Agreement, EMC makes representations and warranties for Syncora's benefit.  Forlenza Decl. Ex. 1 § 2.01 (representations and warranties of EMC).

A.   Representations and Warranties Made by EMC in the I&I Agreement

12.   The representations and warranties made by EMC in the I&I Agreement include those about the Transaction and EMC's operations as a whole (the "Transaction-level Warranties").  For example, EMC represents and warrants that the information it provided to Syncora was accurate:

> Neither the Operative Documents nor other material information relating to the HELOCs, the operations of EMC, the Issuer or the Depositor or the financial condition of EMC, the Issuer or the Depositor (collectively, the "Documents"), as amended, supplemented or superseded, furnished to the Insurer in writing or in electronic form by EMC, the Issuer or the Depositor contains any statement of a material fact which was untrue or misleading in any material respect when made.

*Id.* § 2.01(l).

13.   The Transaction-level Warranties in the I&I Agreement include additional representations by EMC that all of its practices, procedures, and policies are in compliance with applicable laws and regulations, and that the offering documents for the Transaction – which, among other things, describe GreenPoint's origination and underwriting practices – comply with applicable securities laws and do not contain any material misstatements or omissions.  *Id.* §§ 2.01(i), 2.01(m).

14.   The I&I Agreement also contains representations and warranties by EMC about the quality of the loan pool and of individual loans ("Loan-Level Warranties").  The Loan-Level Warranties were made by EMC in other Operative Documents – principally the MLPA – and are fully incorporated into the I&I Agreement and re-made therein for Syncora's benefit:

> Each of the representations and warranties of EMC, the Issuer and
> the Depositor contained in the applicable Operative Documents
> [defined to include the I&I Agreement, the MLPA, and the SSA] is
> true and correct in all material respects and each of EMC, the
> Issuer and the Depositor hereby makes each such representation
> and warranty to, and for the benefit of, the Insurer as if the same
> were set forth in full herein.

*Id.* § 2.01(n). The Loan-Level Warranties are again restated and incorporated for Syncora's

benefit in Section 2.02(j) of the I&I Agreement: "EMC . . . hereby incorporates and restates its

representations, warranties and covenants as set forth in [the Operative Documents] for the

benefit of the Insurer." *Id.* § 2.02(j).

15.     The Loan-Level Warranties made by EMC in the Operative Documents

and incorporated, re-made, and restated for Syncora's benefit in the I&I Agreement are

numerous and broad.  EMC makes representations about, among other things, the attributes of

the loan pool and of individual loans, and the practices used to originate, underwrite, and service

the loans.

16.     For example, EMC represents and warrants, without any qualifying

language as to its knowledge or otherwise, that "no fraud, error, omission, misrepresentation,

negligence or similar occurrence with respect to a [loan] has taken place on the part of Seller or

the Mortgagor, or, on the part of any other party involved in the origination of the [loan]."

Forlenza Decl. Ex. 3 § 7(c), restated in and incorporated by Forlenza Decl. Ex. 1 §§ 2.01(j),

2.01(n).

B.     Syncora's Remedies Under the I&I Agreement

17.     The I&I Agreement provides Syncora remedies to address breaches by

EMC of its contractual obligations, including breaches of the representations and warranties

made in the I&I Agreement for Syncora's benefit.  In addition to any remedies available to

Syncora under the Operative Documents, the I&I Agreement states that Syncora may:

> [T]ake whatever action at law or in equity as may appear necessary
> or desirable in its judgment to collect the amounts, if any, then due
> under this Insurance Agreement or any other Operative Documents
> or to enforce performance and observance of any obligation,
> agreement or covenant of EMC, the Issuer or the Depositor under
> this Insurance Agreement or any other Operative Documents.

Forlenza Decl. Ex. 1 § 5.02(a)(vi); *see also id.* at 5.02(b) (no remedy is exclusive of any other

remedy, but each remedy shall be in addition to other remedies given "under this Insurance

Agreement, the Indenture or existing at law or in equity").

        18.     The I&I Agreement also provides Syncora: a remedy of indemnification

for any claims, losses, or demands arising out of or relating to, among other things, any breach of

a representation or warranty made by EMC (see *id.* § 3.04(a)); reimbursement for any expenses,

including attorneys fees, incurred by Syncora in enforcing EMC's obligations under the

Operative Documents (see *id.* § 3.03(c)); reimbursement for any payments resulting from, among

other things, EMC's failure to comply with the remedial provisions of the SSA (see *id.* §

3.03(b)); and a subrogation remedy (see *id.* § 3.07).

        19.     Moreover, the I&I Agreement provides that EMC's obligations are

"absolute and unconditional" and must be performed notwithstanding any potential defenses to

non-performance that EMC may have under any other Operative Document:

> The obligations of EMC, the Issuer, the Depositor and the Servicer
> hereunder shall be absolute and unconditional and shall be paid or
> performed strictly in accordance with this Insurance Agreement
> under all circumstances irrespective of . . . (vii) any other
> circumstances . . . that might otherwise constitute a defense
> available to, or discharge of, EMC, the Issuer, the Depositor or the
> Servicer in respect of any Operative Document.

*Id.* § 4.03(a).

20.     In addition to Syncora's rights and remedies under the I&I Agreement,

Syncora is entitled to certain additional rights as a third-party beneficiary of certain of the

Operative Documents:

> Each of EMC, the Issuer, the Depositor and the Servicer agrees
> that the Insurer shall have all rights provided to the Insurer in the
> Operative Documents and that the Insurer shall constitute a third
> party beneficiary with respect to such rights in respect of the
> Operative Documents.

*Id.* § 2.02(j).

## THE MLPA

21.     The only two parties to the MLPA are EMC, in its capacity as "HELOC

Seller," and Bear Stearns Asset Backed Securities I LLC ("Bear Stearns"), in its capacity as

"Purchaser." Forlenza Decl. Ex. 3.

22.     The MLPA is a sales agreement the purpose of which is the transfer by

sale of a pool of loans from the HELOC Seller to the Purchaser. *Id.* at 1.

A.      Representations and Warranties Made by EMC in the MLPA

23.     The MLPA contains a number of representations and warranties by EMC,

including representations and warranties about the underlying HELOCs (see *id.* § 7) and

representations and warranties about the business and practices of EMC as HELOC Seller (see

*id.* § 8).

24.     As noted, each of the representations and warranties made by EMC in the

MLPA, in its capacity as HELOC Seller, is restated by EMC, in its capacity as Sponsor, in the

I&I Agreement for Syncora's benefit. Forlenza Decl. Ex. 1 §§ 2.01(n), 2.02(j).

25.    Section 7 of the MLPA recites 71 separate representations and warranties

made by EMC with respect to the underlying loan pool, see Forlenza Decl. Ex. 3 § 7, including

the following:

> MLPA § 7(a): "[T]he information set forth in the Mortgage Loan
> Schedule hereto is true and correct in all material respects; all
> information supplied by, on behalf of, or concerning the Mortgagor
> is true, accurate and complete and does not contain any statement
> that is or will be inaccurate or misleading in any material respect."

> MLPA § 7(c): "No fraud, error, omission, misrepresentation,
> negligence or similar occurrence with respect to a Revolving
> Credit Loan has taken place on the part of Seller or the Mortgagor,
> or, on the part of any other party involved in the origination of the
> Revolving Credit Loan."

> MLPA § 7(e): "[E]ach HELOC at the time it was made complied
> in all material respects with all applicable local, state and federal
> laws and regulations, including, without limitation, usury, equal
> credit opportunity, disclosure and recording laws and all applicable
> predatory, abusive and fair lending laws; and each HELOC has
> been serviced in all material respects in accordance with all
> applicable local, state and federal laws and regulations, including,
> without limitation, usury, equal credit opportunity, disclosure and
> recording laws and all applicable anti-predatory lending laws and
> the terms of the related Mortgage Note, the Mortgage and other
> loan documents."

> MLPA § 7(g): "[T]here is no default, breach, violation or event of
> acceleration existing under any Mortgage or the related Mortgage
> Note and there is no event which, with the passage of time or with
> notice and the expiration of any grace or cure period, would
> constitute a default, breach or event of acceleration; and neither the
> HELOC Seller, any of its affiliates nor any servicer of any related
> HELOC has taken any action to waive any default, breach,
> violation or event of acceleration; and no foreclosure action is
> threatened or has been commenced with respect to any HELOC."

> MLPA § 7(x): "[T]he Mortgage File contains an appraisal of the
> related Mortgaged Property signed prior to the final approval of the
> Revolving Credit Loan application by a Qualified Appraiser, who
> had no interest, direct or indirect, in the Mortgaged Property or in
> any loan made on the security thereof, and whose compensation is
> not affected by the approval or disapproval of the Revolving Credit
> Loan, and the appraisal and appraiser both satisfy the requirements

of Fannie Mae and Freddie Mac and Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Revolving Credit Loan was originated. The appraisal is in a form acceptable to Fannie Mae or Freddie Mac."

MLPA § 7(kkk): "[N]o Revolving Credit Loan has an LTV [loan-to-value ratio] or CLTV [combined loan-to-value ratio], as applicable, in excess of 100% and no second lien Revolving Credit Loan has an Equity LTV in excess of 100%."

MLPA § 7(ooo): "[T]he methodology used in underwriting the extension of credit for each Revolving Credit Loan . . . confirmed that at the time of origination, the Mortgagor had a reasonable ability to make timely payments on the Revolving Credit Loan."

B.     The Repurchase Provision

        26.     Section 7 of the MLPA provides a remedy – referred to herein as the

"repurchase provision" – available to the Purchaser and certain third parties (including Syncora

as the Note Insurer) to address EMC's breach of a Section 7 representation and warranty:

> Upon discovery or receipt of notice by the HELOC Seller, the Purchaser, the Indenture Trustee or the Note Insurer of a breach of any representation or warranty of the HELOC Seller set forth in this Section 7 which materially and adversely affects the value of the interests of the Purchaser, the Noteholders, the Indenture Trustee or the Note Insurer any of the HELOCs delivered to the Purchaser pursuant to this Agreement or which adversely affects the interests of the Note Insurer, the party discovering or receiving notice of such breach shall give prompt written notice to the others. In the case of any such breach of a representation or warranty set forth in this Section 7, within 90 days from the date of discovery by the HELOC Seller, or the date the HELOC Seller is notified by the party discovering or receiving notice of such breach (whichever occurs earlier), the HELOC Seller will either (i) cure such breach in all material respects, (ii) repurchase the affected HELOC at the applicable Purchase Price or (iii) if within two years of the Closing Date, substitute a qualifying Substitute HELOC in exchange for such HELOC.
>
> Any cause of action against the HELOC Seller or relating to or arising out of a breach by the HELOC Seller of any representations and warranties made in this Section 7 shall accrue as to any HELOC upon (i) discovery of such breach by the HELOC Seller or notice thereof by the party discovering such breach and (ii) failure

> by the HELOC Seller to cure such breach, repurchase such
> HELOC or substitute a qualifying Substitute HELOC pursuant to
> the terms hereof.

*Id.* § 7 (located after the 71 representations and warranties).

## SYNCORA INVOKES THE REPURCHASE PROVISION

27.     When the Transaction began to show signs of poor performance, Syncora, through its counsel, hired third-party consultants at considerable expense to reunderwrite a portion of the loans in the pool.  Through that process, Syncora discovered that greater than 85% of a randomly selected pool of loans (*i.e.*, containing both performing and defaulting or delinquent loans) – and an even higher percentage of several adversely selected pools of loans (*i.e.*, containing only defaulting or delinquent loans) – contained defects that constituted a breach by EMC of one or more loan-level warranties.  Compl. ¶¶ 49-55.

28.     After discovering these breaches, Syncora invoked the repurchase provision.  Compl. ¶¶ 49-55.  In a series of letters, Syncora notified EMC of the breaches of loan-level warranties discovered by the third-party consultants, and demanded that EMC cure the breaches, repurchase the loans, or provide a substitute for the breaching loans.  Compl. ¶¶ 53-54; Forlenza Decl. ¶ 18.

29.     To date, Syncora has notified EMC of 1,315 breaching loans and has demanded that EMC comply with its obligations under the repurchase provision to cure, repurchase, or replace those loans.  EMC has refused to repurchase 1,283 of those loans, while agreeing to repurchase only 32.  Forlenza Decl. ¶ 18-19.

30.     Of the 32 loans that EMC agreed to repurchase, it has not actually repurchased a single one.  Forlenza Decl. ¶ 19.

**EMC'S REJECTION OF SYNCORA'S REPURCHASE DEMANDS**

31.     In its 1,283 specific responses to Syncora's repurchase demands, EMC has never asserted that it was rejecting a repurchase request because of Syncora's failure to demonstrate that the loan had defaulted as a result of the cited warranty breach. Forlenza Decl. ¶ 19.

32.     Syncora's first repurchase demand letter was sent to EMC in March 2008, and EMC responded in June and August 2008. EMC's responses did not contain any argument about Syncora's alleged failure to prove a "material and adverse" effect on Syncora's interests or that the loan had defaulted as a result of the cited warranty breach. Forlenza Decl. ¶¶ 19-20.

33.     Syncora's second repurchase demand letter was sent to EMC in June 2008, and EMC responded in October 2008. Again, EMC's responses did not contain any argument about Syncora's alleged failure to prove a "material and adverse" affect on Syncora's interests or that the loan had defaulted as a result of the cited warranty breach. Forlenza Decl. ¶¶ 19, 21.

34.     Syncora filed this lawsuit on March 31, 2009, in part due to EMC's near-total refusal to repurchase the breaching loans identified by Syncora. In its Complaint, Syncora asserted, among other things, that EMC had breached the MLPA's repurchase provision and had materially breached the I&I Agreement as a whole. Compl. ¶¶ 65, 70.

35.     Syncora's third repurchase demand letter was sent to EMC in March 2009, and EMC responded in June 2009, after this litigation had begun. In its responses, EMC asserted for the first time that "the alleged defect does not materially and adversely affect the value of the interest in the loan." EMC's response made no reference to Syncora's alleged failure to demonstrate that the loan had defaulted as a result of the cited warranty breach, nor have any of EMC's subsequent responses. Forlenza Decl. ¶¶ 19, 22.

## EMC'S PRE-LITIGATION REPURCHASE POLICY

36.     In its motion for partial summary judgment, Syncora asserts that the determination under the repurchase provision of whether a warranty breach "materially and adversely affects the value of the interests of [Syncora] in any of the HELOCs" or "adversely affects the interests of [Syncora]" is made as of the time of the breach of warranty (the closing date of the Transaction) and without regard to the subsequent performance of the loan, including whether the loan defaulted or whether the warranty breach caused the default.

37.     EMC takes the opposite view.  In a May 24, 2010 letter to the Court, EMC asserted that any breaches of representations and warranties on its part will not have a "material" or "adverse" effect unless the breach "cause[s] Syncora's injury."  *See* Forlenza Decl. Ex. 5 at 7 (May 24, 2010 Letter from John Callagy to Hon. Paul Crotty).  Similarly, EMC argued that Syncora cannot demand repurchase for any loan that is still performing.  *Id.* at 3 n.2.

A.     <u>EMC Ordered GreenPoint to Repurchase Performing Loans from this Very Transaction</u>

38.     The loans in this Transaction were pooled and securitized by EMC after being purchased from GreenPoint Mortgage, a loan originator.  Documents show that EMC ordered GreenPoint to repurchase loans that EMC had already sold into this Transaction and that some of these loans were still performing at the time that EMC made its demands.

39.     ███████████████████

████████████████████████

████████████████████████████

████████████████████████████████

██████████████



40.

41.

42.

43.

44.

45.

██████████████████████████████████████████████████

████████████████████

46.   ████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

47.   ██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████

48.   ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████

49.   ██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

50.   ██████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

51.     The three loans that were just described (Loan Nos. ███████, ███████, ███████) were sold into this Transaction on March 6, 2007.  Forlenza Decl. ¶ 23.

52.     When EMC made these repurchase demands on GreenPoint, it was not simply "passing along" repurchase demands made by Syncora because, at that time, Syncora had not made any repurchase demands on EMC from this Transaction. ██████████

███████████████████████████████████████████████

████████████████████████

B.     The Deposition of Tamara Jewell

53.     On September 29, 2011, Syncora deposed Tamara Jewell.  The transcript of her deposition is attached to the Forlenza Declaration as Exhibit 9.

54.     █████████████████████████████

███████████████████████████████████████████████

███████████

55.     ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

█████████

56.     ████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████



57.



58.

59.

████████████████████████████████████
█████████████████

████████████████████████████████████████████
██████████████████████████████

████████████████████████████████████████████
██████

████████████████████████████████████

60.   ██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

61.   ██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████

62.   ██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████   A copy of the Claim Filing Process is attached

to the Forlenza Declaration as Exhibit 10.

63.   On page 46 of the Claims Filing Process, the following paragraph appears,

Forlenza Decl. Ex. 10 at EMC-AMB 004932916:

> In contrast to monetary claims, repurchase claims are not a current
> real loss to the Firm but represent an exposure to loss.  For
> example, EMC's Quality Control department found a loan where
> the deed was not signed properly.  Therefore, EMC acquired a loan
> to which there is no clear title.  In this case, EMC would have no
> recourse if the borrower does not pay their mortgage.  So in
> essence, EMC has only exposure to loss.  To mitigate the true risk

of loss, EMC is filing a repurchase claim to remove the loan from the books thereby eliminating any possibility of real loss.

64. 



**C.    The Deposition of Amy Adame**

65.    On May 25, 2011, Syncora deposed Amy Adame.  The transcript from her deposition is attached to the Forlenza Declaration as Exhibit 11.

66.

67.



D.    The Deposition of Alison Malkin

68.

69.

70.

71.

████████████████████████████████████████████████████████

███████████████████████

72.    ███████████████████████████████████

███████████████████████████████████████████████████ In this letter,

EMC demanded that GreenPoint repurchase the same 379 loans that had been identified by

Syncora.  A copy of this cover letter is attached to the Forlenza Declaration as Exhibit 14.  A

spreadsheet attached to the letter identified the breaches that were being asserted by EMC against

GreenPoint.  ███████████████████████████████████████

██████████████████████████

73.    ███████████████████████████████████

██████████████████████████████.

74.    On June 26, 2008, Malkin responded to GreenPoint and reasserted all 379

repurchase demands.  ████████████████████████████ Malkin

specifically stated to GreenPoint that "it is EMC's position that these breaches materially and

adversely affect the value of" the loans.  A copy of this letter is attached to the Forlenza

Declaration as Exhibit 15.

75.    █████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████

76.





Dated: October 26, 2011
        New York, New York

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By: _____

Philip R. Forlenza
Erik Haas
Matthew J. Shepherd
Anthony C. DeCinque
Jason R. Vitullo

1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Fax:  (212) 336-2222

*Attorneys for Plaintiff*