**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SYNCORA GUARANTEE INC., formerly
known as XL CAPITAL ASSURANCE INC.,

                       Plaintiff,

          v.

EMC MORTGAGE CORPORATION,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 09 Civ. 3106 (PAC)

 

 

## MEMORANDUM OF LAW IN SUPPORT OF
## EMC MORTGAGE LLC'S MOTION FOR LIMITED RECONSIDERATION
## OF THE COURT'S JUNE 19, 2012 SUMMARY JUDGMENT ORDER

Richard A. Edlin
Eric N. Whitney
Anastasia A. Angelova
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400

Robert A. Sacks
Sharon L. Nelles
Darrell S. Cafasso
David A. Castleman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for EMC Mortgage LLC*

July 3, 2012

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................4

CONCLUSION ..............................................................................................................14

Defendant EMC Mortgage LLC (f/k/a EMC Mortgage Corporation) ("EMC") submits this memorandum of law in support of its motion, pursuant to Local Civil Rule 6.3, for limited reconsideration of the Court's Opinion and Order, dated June 19, 2012, which granted in part and denied in part plaintiff Syncora Guarantee Inc.'s ("Syncora") motion for partial summary judgment.

## INTRODUCTION

EMC is mindful that a motion for reconsideration should not be used to relitigate issues already decided by the Court. *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 225, 257 (2d Cir. 1995). EMC seeks reconsideration only of the Court's determination that "the requirement in Section 7 of the MLPA [Mortgage Loan Purchase Agreement] that a breach of a representation and warranty must 'adversely affect[] the interests of the Note Insurer' is not ambiguous" (Opinion and Order, dated June 19, 2012 ("Opinion"), at 15 (alteration in original)), and that Syncora may invoke the contractual repurchase remedy "in the event of a breached representation and warranty, regardless of whether the breach caused Syncora to suffer actual pecuniary loss." (Opinion at 9).

Respectfully, the Court's ruling that the language of Section 7 of the MLPA is capable of only one reasonable interpretation is not correct for reasons that the Court may have overlooked in rendering its decision:

- ***First***, the Court's interpretation renders the "adversely affects" requirement of the clause meaningless, in violation of the cardinal canon of contract construction that an interpretation which renders part of the contract surplusage or without effect "is not preferred and [should] be avoided." *Garza* v. *Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988); *see also Galli* v. *Metz*, 973 F.2d 145, 149 (2d Cir. 1992). Although the Court noted this principle early in its decision (Opinion at 6), it did not heed it when it adopted Syncora's proposed interpretation, under which "a breach of the representations and warranties is itself an 'adverse effect' on its interests as an insurer sufficient to trigger the repurchase remedy." (Opinion at 7). Because the construction adopted by the Court renders half of the clause superfluous, this strongly suggests that it is not the only

plausible interpretation of this language, particularly where EMC has offered a competing interpretation that gives meaning to the entire clause and where a court is required, on summary judgment, to resolve all inferences in favor of EMC, the non-moving party.

- **Second**, the Court's interpretation overlooks that the repurchase remedy in Section 7 of the MLPA is not the sole remedy available to Syncora under the relevant contracts and is not intended to address any and all complaints that Syncora might have about the transaction, including its complaints about whether it was wrongly induced to enter into the transaction. The Court presumed—without the submission of any evidence from Syncora showing it to be so—that the note insurer's "interests" referenced in Section 7 were the note insurer's pre-contractual interests under New York law in receiving accurate information before deciding whether to issue a policy. (*See* Opinion at 7, 8.) However, nothing in the record compelled this conclusion and the Court overlooked that Section 7 is not necessarily directed to the note insurer's pre-contractual interests, just as it is not directed to the pre-contractual interests of the noteholders or the indenture trustee, whose interests are also referenced in the clause. Rather, the repurchase remedy in Section 7 is a specific post-contractual remedy, and Syncora's post-contractual interest in the transaction is its interest in the actual performance of the loans. Because the "interests" protected by the repurchase remedy in Section 7 could reasonably be referring to the note insurer's post-contractual interests in the performance of the loans actually included in the transaction as opposed to its pre-contractual interests in issuing a policy, the Court should not have concluded as a matter of law that there is only one possible interpretation of the repurchase remedy in Section 7.

- **Third**, in evaluating the language of Section 7, the Court did not acknowledge that there is nothing in the language of the contract that precludes EMC's interpretation of Section 7's requirement that a breach "adversely affects the interests of the Note Insurer" before repurchase of a loan is required. Although it is true, as the Court observed, that the contract does not explicitly say that Syncora must experience an actual adverse effect, not a mere hypothetical effect or increase in risk, before repurchase of a loan is required, it is equally true that the contract does not explicitly say that Syncora may invoke the repurchase remedy whenever a breach increases its risk of loss. Neither interpretation is compelled by the contractual language, which is why the issue should be decided by the trier of fact after consideration of all pertinent extrinsic evidence.

- **Fourth**, EMC presented evidence (and, if permitted, will present further evidence) that its interpretation of the contractual repurchase provision is both a reasonable one and one that is consistent with the actual intent of the parties. Indeed, Syncora's own Managing Director, Christine Brunie, gave deposition testimony that confirms EMC's interpretation and is contrary to the interpretation advanced by Syncora and adopted by the Court. While this testimony, which was not referenced by the Court in its order, is not conclusive of the issue, it is a compelling demonstration on a motion for summary judgment that (i) more than one interpretation of the relevant language is reasonable, (ii) there is support for EMC's interpretation other than EMC's own say so, and (iii) the proper interpretation of the disputed contractual language presents an issue that should properly be determined after consideration of evidence at trial.

The Court's ruling is a drastic one on summary judgment, particularly in a case where discovery is still ongoing.  Indeed, since briefing of the motion was completed last December (EMC filed a Rule 56(d) declaration along with its opposition), additional facts have been gathered that further emphasize that summary judgment interpreting the requirement in Section 7 that a breach "adversely affect[] the interests of the Note Insurer" is not appropriate. Although these facts by no means comprise the complete presentation that EMC would intend to make at trial, which would also include expert testimony (expert discovery has not yet begun) and cross examination of any witnesses Syncora might offer to support its interpretation (it offered no testimony in support of its motion), these include:  (i) testimony from multiple witnesses that they understand that an actual effect on a loan is required before repurchase is required, (ii) an internal email from another Syncora Managing Director confirming that Syncora must show damage to compel repurchase of a loan for breach of a representation and warranty, (iii) testimony that Syncora was aware when it entered into the transaction that significant percentages of loans were likely to violate representations and warranties, which would support the construction that something more would be required in order to compel their repurchase, and (iv) testimony that the specific representations and warranties in the MLPA were not even agreed upon until after Syncora had determined to proceed with the transaction, which would suggest that the repurchase remedy is directed to an effect on the actual performance of the loans in the transaction rather than on an interest in the insurer's risk in deciding whether to enter into the transaction.

Because the contract lends itself to more than one reasonable reading, the trier of fact (here, the Court) should decide the issue after consideration of all pertinent extrinsic

evidence as to the meaning and application of the "adversely affect[] the interests of the Note Insurer" requirement.

## ARGUMENT

EMC is asking the Court to reconsider only its threshold legal determination that the repurchase remedy contained in Section 7 of the MLPA, which requires that a breach of a representation and warranty must "adversely affect[] the interests of the Note Insurer," is not ambiguous. As the Second Circuit stated, "[s]ummary judgment is a drastic procedural weapon" because it "cuts off a party's right to present his case to the [trier of fact]." *Garza*, 861 F.2d at 26 (quoting *Donnelly* v. *Guion*, 467 F.2d 290, 291 (2d Cir. 1972)). Thus, "[w]here the contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." *Rothenberg* v. *Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (alterations in original) (internal quotation marks omitted).

A motion for reconsideration is governed by Local Civil Rule 6.3 and is appropriate where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see* Local Civ. R. 6.3 (reconsideration warranted on "matters or controlling decisions" that "the court has overlooked"). A motion for reconsideration may also be granted to "correct a clear error or prevent manifest injustice." *Van Cleef & Arpels Logistics, S.A.* v. *Landau Jewelry*, 583 F. Supp. 2d 461, 463 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008). Although it should be exercised only in appropriate cases and not as a matter of course, courts always have the power to reconsider their previous decisions when manifest injustice would result from a refusal to do so,

even where the evidence on which reconsideration is based could have been presented earlier. *See, e.g.*, *Floyd* v. *City of N.Y.*, 813 F. Supp. 2d 457, 464 & n.73 (S.D.N.Y. 2011) (citing cases).

The Court's grant of summary judgment on the threshold issue of the meaning of the contractual repurchase remedy under Section 7 of the MLPA is erroneous and will result in manifest injustice here.  As explained below, reconsideration is warranted because in determining that the requirement that a breach of a representation and warranty "adversely affect[] the interests of the Note Insurer" is susceptible to only a single meaning, the Court overlooked an important principle of contract construction, based its conclusion on a fundamental assumption about Syncora's interests that was not compelled and that is controverted, and did not consider certain evidence that was before it.  When viewed in the light most favorable to EMC as the non-moving party, *see Garza*, 861 F.2d at 28, the disputed clause is susceptible to more than a single meaning, which precludes the grant of summary judgment. Thus, while the Court should reconsider its conclusion based on the record that was before the Court in the briefing on the motion, which was completed in December 2011, the Court should take note that in December 2011, the record in this case was not fully developed—and still today fact discovery is ongoing and expert discovery has not yet begun—and additional facts reinforce the ambiguity in this clause and the existence of a dispute that should be resolved not on summary judgment but on a proper evidentiary record.

***The Interpretation the Court Adopted as Being Required as a Matter of Law Violates a Basic Rule of Contract Construction.***  As the Court recognized, "[a] contract should not be interpreted so as to render a clause superfluous or meaningless."  (Opinion at 6 (citing *Galli* v. *Metz*, 973 F.2d 145, 149 (2d Cir. 1992))); *see also Rothenberg*, 755 F.2d at 1019 (citing *Corhill Corp.* v. *S.D. Plants, Inc*., 176 N.E.2d 37, 39 (N.Y. 1961)); *Garza*, 861 F.2d at 27-28.

Yet, despite recognizing the existence of this fundamental rule of contractual interpretation, the Court did not apply it when it determined that the only permissible construction of the repurchase remedy in Section 7 is one that violates that rule.  Because EMC has offered a contrary interpretation that does not offend this principle of law, this strongly suggests, at a minimum, that there is more than one potential interpretation of the requirement that a breach "adversely affect[] the interests of the Note Insurer" such that summary judgment is not appropriate.

As the Court recognized, under Syncora's construction, which the Court adopted as a matter of law, "a breach of the representations and warranties is itself an 'adverse effect' on [Syncora's] interests as an insurer sufficient to trigger the repurchase remedy."  (Opinion at 7.) If this is true, the "adversely affects" language serves no purpose at all—the contract could have simply said that EMC is obligated to repurchase loans whenever there is a breach, which of course it does not.  Under this construction, there was no reason for the parties to have included the additional requirement that any breach also have an adverse effect.

Courts should not presume that parties include contractual requirements that have no meaning.  The Second Circuit has many times cautioned against interpreting contracts in a manner that renders a clause to be meaningless or surplusage.  In *Rothenberg* and *Garza*, for example, the Second Circuit reversed the grant of summary judgment on issues of contract interpretation because the district court's interpretation rendered part of the relevant contracts superfluous or meaningless.  *Rothenberg*, 755 F.2d at 1020; *Garza*, 861 F.2d at 27-28.  As the Second Circuit warned in *Garza*, although it is possible that the parties' intent was to render a clause surplusage or meaningless, "such interpretation is not preferred and will be avoided if possible."  861 F.2d at 27.  To the contrary, "an interpretation 'that gives a reasonable and

-6-

effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'"  *Id.* (quoting *Rothenberg*, 755 F.2d at 1019).

Here, there is an alternative reasonable interpretation of the contract that gives effect to all of the contractual requirements.  Under EMC's interpretation, not all breaches give rise to repurchase obligations but only those that have an actual adverse effect on Syncora. While EMC believes that this requires Syncora to demonstrate that a claimed breach had an actual effect on the performance of a particular loan, the Court need not resolve that issue now but should simply reconsider its prior decision and deny the motion because constructions other than the one offered by Syncora are reasonably possible.

*The Meaning of "Interests of the Note Insurer" Is Capable of Conflicting Interpretations.*  The Court's construction of the repurchase remedy is based fundamentally on its assumption that the "interests of the Note Insurer" referenced in Section 7 are an insurer's "interest in receiving complete and accurate information before deciding whether to issue a policy."  (Opinion at 7.)  Syncora offered no evidence in support of any conclusion that these pre-contractual interests are the "interests" to which the parties intended the repurchase remedy in Section 7 to be directed.  Syncora instead conflated the issue by lumping its motion relating to the repurchase remedy in Section 7 of the MLPA together with its separate motion directed to the relief to which it might be entitled, not under the repurchase remedy of Section 7 but in its separate claim for rescissory damages, if it were to show pervasive breaches of representations and warranties going to the formation of the contract.  But the circumstances under which an insurer may seek rescission of an insurance policy—issues that are arguably relevant to Syncora's separate claim for breach of the I&I Agreement—to the extent they have any bearing

on what the parties intended in the language of a specific remedy providing for the repurchase of individual loans are certainly not conclusive of that issue.

There is nothing in the record on the motion that compelled the Court to presume that the "interests" of Syncora to which the parties intended Section 7 of the MLPA to be directed are its interests under the insurance law in receiving information prior to issuing a policy or the grounds on which an insurer may rescind a policy.  To the contrary, the language of the MLPA and the other relevant contracts is silent on the point.  And in the context of the MLPA and the other relevant agreements, the language could reasonably support a different conclusion—that the interests of the note insurer at issue are its post-contractual interests in the performance of the loans in the transaction.  Indeed, Section 7 of the MLPA is a specific remedy limited to the repurchase of individual loans.  Structurally, this suggests that the "interests" being addressed are interests relating to individual loans.  Moreover, by its very structure and context, Section 7 provides for the post-contract repurchase of individual loans where something happens to cause a breach to have an adverse effect on that loan.  It thus contemplates by its express terms events occurring post-transaction that cause a party to demand repurchase of a particular loan.  And it provides a remedy not just to the note insurer but to the various beneficiaries of the securitization whose interests depend upon the performance of the loans in the transaction, suggesting that the note insurer's interests being addressed are, like the other beneficiaries, interests in the performance of the loans.  However, the interests identified by the Court do not coincide with this.  They are not interests in actual performance but in potential performance, and they are not interests directed to the performance of individual loans but to overall performance of a pool comprised of thousands of loans.

Again, EMC does not ask the Court to adopt its interpretation on this motion. However, none of the relevant agreements defines the meaning of "interests of the Note Insurer" as used in Section 7 of the MLPA and nothing in the contractual language compels an assumption that it must refer to Syncora's interests in obtaining information to decide whether to enter into the transaction. EMC's alternative construction that "interests" refers to the insurer's interests once the transaction has been entered into—*i.e.*, its interest in the actual performance of the loans—is not precluded and has the additional benefit that it permits a construction of Section 7 that does not render half of it meaningless or surplusage. On this record, summary judgment should not have been granted.

### The Contractual Language Does Not Compel Only One Construction.

Although the interpretation proffered by Syncora and adopted by the Court is not precluded by the language of the contract, it is by no means the only plausible interpretation of the clause, which has no precise or definite meaning that necessarily follows from the undefined terms "adversely affects" and "interests." *See Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 159 (2d Cir. 2000) (a word or phrase is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference in opinion" (internal quotation marks omitted)). Under EMC's alternative interpretation (which EMC supported by actual evidence), Section 7 of the MLPA requires that a breach cause an actual adverse effect, not just an increase in risk or potential adverse effect, to trigger EMC's repurchase obligations. Under EMC's construction, "adversely affects" is a separate and independent requirement, which comports with governing principles of contract construction. Nothing in the contract's language prevents this interpretation.

In rejecting EMC's interpretation as a matter of law, the Court reasoned that "nothing in the language of the parties' agreements" requires that a breach cause an actual adverse effect, and not simply an increase in risk, and that the parties could have included language to this effect if they intended such a requirement.  (Opinion at 9.)  Yet, the Court appears to have overlooked that the opposite is equally true.  Nothing in the contract requires that an "adverse effect" occur upon an increase in risk rather than upon the occurrence of an event that has an actual, as opposed to merely hypothetical, effect.  The parties could have included language providing that Syncora may invoke the repurchase remedy whenever a breach increases the risk that a loan might default.  They did not.  They could also have included language requiring repurchase for breaches that "may adversely affect" Syncora.  But again they did not.  And they could have negotiated language that eliminated the "adverse effect" requirement entirely, as the construction adopted by the Court appears to do.  But the parties did not do this either.  The language of the contract here is different—it mandates repurchase only for breaches that "adversely affect[] the interests of [Syncora]."

Similarly, the fact that related contracts permit the repurchase of a loan in certain circumstances where the loan has not defaulted does not suggest, much less compel, a conclusion that Section 7 does not require that there be an actual effect on Syncora before repurchase of a loan is required.  As EMC previously pointed out in opposing the motion, but the Court did not acknowledge, there are limited reasons that performing loans might have an actual effect on the note insurer's interests (or the interests of one of the other beneficiaries of Section 7) and be subject to repurchase.  One example that EMC identified was loans where the interest rate or other terms have been modified in a way that adversely affects their cash flow.  (EMC's Memorandum of Law in Opposition to Syncora's Motion for Partial Summary Judgment, dated

-10-

November 22, 2011 ("Opp."), at 18 n.5.)  But the fact that the contracts include wholly separate provisions for what happens in limited and extraordinary circumstances when a performing loan can be repurchased does not compel a conclusion that no actual effect on Syncora is required or that the performance of a loan does not have any bearing in all circumstances on Syncora's rights to compel repurchase pursuant to Section 7 of the MLPA.

   Indeed, contrary to the inference drawn by the Court, the fact that Section 2.05 of the Sale and Servicing Agreement ("SSA") references the repurchase of loans that are not in default actually supports, rather than contradicts, EMC's interpretation of the meaning of Section 7 of the MLPA.  Unlike Section 7 of the MLPA, the SSA expressly provides under limited circumstances for the repurchase of loans *without* any "adverse effect" requirement.  Thus, Section 2.02 of the SSA, which is expressly covered by Section 2.05 of the SSA, contains a provision requiring the repurchase of loans identified within 180 days following the closing which have a defect that materially interferes with the master servicer's ability to foreclose on the property, where EMC has not cured the defect after notice.  Unlike all of the repurchase remedies in the SSA that require an "adverse effect," and unlike the repurchase remedy in Section 7 of the MLPA that also requires an "adverse effect," this remedy, which is not at issue in this case or on Syncora's motion, expressly references the requirements of Section 2.05 of the SSA for what must be done to repurchase a performing loan.  This structure reasonably suggests that repurchase of performing loans is not typically expected under a clause requiring an "adverse effect."

   In any event, the Court need and should not resolve on summary judgment what competing inference should be drawn from provisions that can be interpreted in different ways. The existence of a provision in the SSA that allows repurchase of performing loans in certain

instances may be a factor that the Court will ultimately elect to take into account in construing

the disputed contractual language, but it does not compel Syncora's interpretation or make

EMC's unreasonable on a motion for summary judgment.

    Neither party's interpretation is compelled by the language of the contract, which

should be interpreted on a full record.  *See Walk-In Med. Ctrs., Inc*. v. *Breuer Capital Corp*., 818

F.2d 260, 263 (2d Cir. 1987) (a word or phrase is ambiguous when it is "capable of more than

one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of

the customs, practices, usages and terminology as generally understood in the particular trade or

business").  Without looking outside the four corners of the contract, the phrase "adversely

affect[] the interests of [Syncora]" could mean what Syncora says it means (that an adverse

effect means simply an increase in risk) or it could mean what EMC says it means (that an

adverse effect means an actual adverse effect, not a hypothetical or speculative adverse effect).

The Court should decide the issue after hearing evidence at trial, not on summary judgment.

    ***EMC Submitted Extrinsic Evidence That Supports Its Interpretation.***  In

opposing the motion, EMC offered the testimony of Syncora's Managing Director that directly

supports EMC's interpretation.  The Court did not reference or acknowledge this evidence in its

opinion.  Specifically, Ms. Brunie testified that, "if you have a loan that was an exception to an

underwriting guideline, and you never suffered a loss associated with that loan, you then do not

have the right to put that loan back."  (Opp. at 19.)

    Consistent with Ms. Brunie's testimony, Syncora did not make any repurchase

demands on EMC until March 2008, one year after the Transaction, when loans backing the

transaction at issue began to default in significant numbers.  Whatever its position now,

Syncora's own practices contradict its proposed reading of the contract that it may seek repurchase for mere alleged breaches of representations and warranties.

Syncora's only response to this testimony from its own witness is that Ms. Brunie is not a Rule 30(b)(6) witness in this case.  (*See* Transcript of June 13, 2012 Hearing at 26:8-16.) This is beside the point.  It is not that Ms. Brunie's testimony is conclusive on a motion for summary judgment, but at minimum it is a strong indication that more than one interpretation of the disputed language is reasonable and the proper interpretation presents an issue that should properly be determined after consideration of evidence at trial.

***Additional Evidence Exists Supporting EMC's Position.***  Syncora's motion was fully briefed in December 2011.  Although discovery is not complete even today, facts continue to be developed that support the denial of summary judgment, including the following:

- Deposition testimony from June 28, 2012, after the Court rendered its opinion, from Susan Davia, the representative of Greenpoint who signed the I&I Agreement in this transaction on behalf of Greenpoint.  Ms. Davia testified to her familiarity with repurchase provisions such as this one based on her participation in this and other transactions over many years in the industry.  She testified that for repurchase to be required, a breach has to have an adverse effect and there must be a nexus between the two.  She explained that if there is a breach that causes a loan to default then repurchase would be required, but that if a loan defaults for reasons other than the breach, no repurchase would be required even if there was also a breach of a representation and warranty.

- Deposition testimony from Lynn Mesuk, a former Bear, Stearns & Co. employee who testified in a related case brought by Ambac Assurance Corporation (the Court ordered these depositions to be produced in this case).  Ms. Mesuk, who was a lawyer in the mortgage finance area of the legal department at Bear Stearns for more than eight and half years, explained that the interests being referenced in repurchase clauses like the one at issue in Section 7 of the MLPA are interests in the stream of principal and interest from the loans in the transaction.

- An email from another Managing Director of Syncora, Mary Jane Constant, who explained "We can put-back any loan w/breach but have to show damages."

- Deposition testimony from another of Syncora's Managing Directors, Linda Kobrin, who was Syncora's principal "transactor" on the transaction at issue in this case.  She testified that she knew going into the transaction, based on the

-13-

results of loan-level due diligence that she reviewed, that at least 7% of the loans in the deal might breach representations and warranties if those results were applied to the pool as a whole.  This knowledge strongly suggests that the parties contemplated that something more than the mere breach of a representation and warranty would be required to compel repurchase and that the requirement of an "adverse effect" was intended to mean an actual effect of such a breach on loan performance rather than an increase in Syncora's risk in deciding to enter into the transaction.

- Deposition testimony from Cassie Lau, a Syncora Senior Managing Director, that the representations and warranties in the MLPA had not been finalized when Syncora made the decision to participate in the transaction.  This reasonably suggests that the interests at issue in the repurchase remedy of Section 7 of the MLPA were Syncora's post-transaction interests in the performance of the loans and not its pre-transaction interests in evaluating the risk of the transaction.

EMC is cognizant of the requirement of Local Rule 6.3 that no affidavits shall be filed by any party unless directed by the Court.  Accordingly, EMC has not submitted this evidence in connection with this motion for reconsideration but is prepared to do so if the Court believes it appropriate.  EMC is also prepared to submit expert evidence about the meaning and intent of such clauses in the industry, although it notes that expert discovery has not even begun in this case.  Nevertheless, EMC believes that even without consideration of any additional evidence, the record demonstrates that the requirement in Section 7 of the MLPA that a breach "adversely affect[] the interests of the Note Insurer" in order to require repurchase of any individual loan is susceptible of more than one reasonable interpretation precluding summary judgment.

## CONCLUSION

For the foregoing reasons, EMC respectfully asks the Court to reconsider its ruling that the "adversely affect[] the interests of [Syncora]" requirement is unambiguous and rule that the contract is ambiguous, precluding summary judgment.

-14-

Dated: New York, New York
      July 3, 2012

/s/ Robert A. Sacks
_____
Robert A. Sacks
Sharon L. Nelles
Darrell S. Cafasso
David A. Castleman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Richard A. Edlin
Eric N. Whitney
Anastasia A. Angelova
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400

*Counsel for EMC Mortgage LLC*